**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. DAVIES,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:05-1569** |
| **v.** | : | **(MCCLURE, D.J.)**<br>**(MANNION, M.J.)** |
| **JO ANNE B. BARNHART, Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claims for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

## I. Procedural Background

The plaintiff protectively filed concurrent applications for DIB and SSI on April 11, 2003. (TR. 55-58, 190-91). The plaintiff alleged that he became disabled on December 16, 2002 due to depression and a tongue abnormality. (TR. 69).

After his claim was denied initially, the plaintiff requested a hearing.

(TR. 29-32, 33, 193-96). A hearing was held before an administrative law judge ("ALJ") on November 19, 2004. The plaintiff and a vocational expert ("VE") testified. (TR. 201-19). On January 28, 2005, the ALJ issued an unfavorable decision. (TR. 15-25).

The plaintiff filed a request for review of the ALJ's Decision. (TR. 12). On June 9, 2005, the Appeals Council denied the request for review. (TR. 6-8). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g). Currently pending is the plaintiff's appeal, filed on August 4, 2005, of the Commissioner's decision. (Doc. No. 1).

**II. Disability Determination Process**

A five-step process is required to determine if a claimant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work, and; (5) whether the claimant's impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The instant action was ultimately decided at the fourth step, when the ALJ determined that the plaintiff could perform his past relevant work as a bowling machine maintenance mechanic, truck driver, and electronic

wheelchair assembler/rehabilitation specialist. (TR. 25).

## III. The ALJ's Decision

Using the disability determination process outlined above, the ALJ determined that: (1) the plaintiff had not engaged in substantial gainful activity since December 16, 2002; (2) the plaintiff's anxiety, depression, and substance dependence were "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c), but; (3) did not meet or medically equaled any impairment listed in Appendix I, Subpart P, Regulations No. 4; and (4) the plaintiff could perform his past relevant work as a bowling machine maintenance mechanic, truck driver, and electronic wheelchair assembler/rehabilitation specialist. The ALJ further found that the plaintiff was not credible regarding his alleged limitations and had the residual functional capacity (RFC) to perform at all physical exertional levels. (TR. 24-25).

In determining, at step three, that the plaintiff's impairments did not meet or equal any listed impairments, the ALJ noted paying special attention to Listings 12.04, affective disorders, 12.06, anxiety disorders, and 12.09, substance addiction disorders. (TR. 22). 20 C.F.R. pt. 404, subpt. P, app.1. The ALJ concluded that the medical record and the plaintiff's symptoms fell short of the criteria for all three listings. (TR. 22).

## IV. Evidence of Record

The plaintiff was fifty-years-old at the time of the ALJ's decision, making him a person "closely approaching advanced age" under the Regulations. (TR. 51). 20 C.F.R. §§ 404.1563(c), 416.963(c). The plaintiff has a high school education and past relevant work experience as a bowling machine maintenance mechanic, truck driver, and electronic wheelchair assembler/rehabilitation specialist. (TR. 24, 70).

The plaintiff has not worked since December 16, 2002, his alleged disability onset date. (TR. 69, 204). He claimed that the inability to concentrate or drive made him unable to work.[1] (TR. 69). The record does not reveal any medical treatment tied to that date; the closest medical record is from a March 27, 2002 follow-up visit regarding a cardiac catheterization that had gone "well." (TR. 129). The plaintiff's physician, Cheryle A. Stone, M.D., noted that the plaintiff had been diagnosed with tongue cancer in January 2002 but was otherwise doing well and was back at work. *Id*.

On March 28, 2003, Dr. Stone reported that the plaintiff had recently been hospitalized following an alcoholic seizure. (TR. 128). Dr. Stone also noted that the plaintiff had recently begun taking Paxil, following his father's

---

1 Although the plaintiff alleged that he had stopped working at his most recent job due to disability, at the hearing he testified that the plant where he worked routinely shut down once every year for one month and then called its workers back, but that the plant had never called him back after his most recent layoff. (TR. 213).

recent death, and that Dr. Stone had encouraged the plaintiff to seek counseling in addition to taking medication. *Id*. The plaintiff denied suicidal thoughts or plans. *Id*. Dr. Stone "strongly encouraged" the plaintiff to seek counseling for alcohol abuse and depression but noted that the plaintiff did not commit to following her advice. *Id*. Dr. Stone diagnosed depression and alcohol abuse with alcohol withdrawal seizure. *Id*.

On April 11, 2003, Dr. Stone again recommended counseling after the plaintiff admitting to not following through with her previous recommendations. (TR. 127). Dr. Stone noted that she tried to impress on the plaintiff that there was "a long sequence of events leading up to this episode"; that the plaintiff "w[ould] lose his driver's license" if he had another seizure; and that he "could ultimately die from the consequences of alcohol." *Id*.

On May 9, 2003, the plaintiff told Dr. Stone that Paxil was helping his depression although he has having trouble sleeping. Dr. Stone recommended that the plaintiff stop drinking and smoking and increase his exercise. (TR. 126).

On July 15, 2003, the plaintiff reported that he was "sleeping lousy" and starting to get panic attacks. He also reported a tongue lesion. (TR. 125). Dr. Stone diagnosed chronic insomnia, noting that the plaintiff stayed up all night and napped all day. *Id*. Dr. Stone also noted that the plaintiff continued to "smoke heavily and drink at least two beers a day." Dr. Stone noted telling the plaintiff that "his sleeping problem will never completely resolve unless he

stops smoking and drinking." *Id*.

In September 2003, the plaintiff reported having a seizure after three days of abstention from alcohol use. (TR. 119). Dr. Stone diagnosed alcohol withdrawal and again recommended that he cease smoking and drinking alcohol. (TR. 118-25). Dr. Stone told the plaintiff that the only way he could stop drinking without experiencing withdrawal seizures was to enter a program where his alcohol withdrawal could be monitored and medication given to prevent seizures. (TR. 120).

The plaintiff underwent an initial psychiatric evaluation on January 8, 2004, with Rakesh Sharma, M.D. (TR. 148-49). The plaintiff was alert, cooperative, and oriented to time, place, and person, although shaky at times. (TR. 149). The plaintiff described his mood as "down." Dr. Sharma noted that his affect was constricted but appropriate to thought content. *Id*. He denied any suicidal or homicidal ideations. His memory was intact and his attention span was good. Dr. Sharma diagnosed depressive disorder and alcohol dependency; assessed a global assessment of functioning ("GAF") score of fifty-five; and recommended a partial program for follow-up and observation.[2] *Id*.

---

2

A GAF of 51-60 indicates moderate mental health symptoms, or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).

Dr. Sharma saw the plaintiff for a follow-up evaluation on February 10, 2004. (TR. 186). The plaintiff reported that the partial program had helped him and that he used alcohol mostly on Fridays. The plaintiff was alert and denied suicidal or homicidal ideations. His impulse control was good, but his judgment and insight were poor. Dr. Sharma recommended that the plaintiff start going to Alcoholics Anonymous ("AA") meetings or participate in an alcohol dependency treatment program. *Id*. On February 17, 2004, the plaintiff was taken to an emergency room following another alcohol withdrawal seizure after the plaintiff had stopped drinking for ten days. (TR. 158-62).

The plaintiff sought treatment with Brenda T. Goodrich, M.D., on April 28, 2004, for a persistent cough and chest congestion. (TR. 152). Upon examination, the plaintiff's lungs were clear, with no wheezes. Dr. Goodrich noted that the plaintiff smoked two packs per day and that she had encouraged the plaintiff to quit. *Id*. Dr. Goodrich diagnosed acute bronchitis and a tobacco use disorder. (TR. 153). A routine chest x-ray ordered by Dr. Goodrich showed a chronic obstructive pulmonary disease (COPD) pattern only, with no acute disease. (TR. 151). Dr. Goodrich prescribed cough syrup. (TR. 153).

Dr. Goodrich completed a Pennsylvania Department of Public Welfare Employability form on behalf of the plaintiff on June 15, 2004. (TR. 187). In it, Dr. Goodrich opined that the plaintiff was permanently disabled. Dr. Goodrich listed the plaintiff's primary diagnoses as COPD, depression,

tobacco abuse, and a seizure disorder. *Id*.

At the hearing, the ALJ asked the VE whether jobs existed that an individual with the plaintiff's vocational profile could perform. (TR. 217-19). The ALJ asked the VE to consider an individual of the plaintiff's age, educational, and work background who had mild difficulties with maintaining concentration, persistence, and pace due to substance abuse; depression symptoms; an anxiety disorder; mild difficulties with social functioning; and a GAF of fifty-five. (TR. 217). The VE responded that such an individual could perform the plaintiff's past medium work as an assembler, bowling pin machine mechanic, and truck driver. *Id*.

The plaintiff testified that he was "working very hard" to cut down on his alcohol consumption, but admitted that he was not getting help from AA or any counseling sources. (TR. 205-06). The plaintiff testified that he had four alcohol withdrawal seizures in the previous two-and-one-half years. (TR. 206). When asked if he thought he would be able to return to work if he stopped drinking, the plaintiff responded that he would not, because he attributed his depression not to his drinking but to his father's June 2002 death. (TR. 206-07). The plaintiff testified that he had trouble with concentration. (TR. 206). He described how he could watch a television program in the morning but later not to able to say what he had watched, and stated that he only drove to food and drug stores. *Id*. Regarding his physical work ability, the plaintiff stated that he had emphysema which limited his

ability to climb stairs; that he was not sure if he had any trouble lifting items that weighed 20-30 pounds; that he had no trouble sitting; and that he had no trouble with his hands or fingers. (TR. 209). The plaintiff also testified that he had back problems, but presented no medical evidence in that regard. (TR. 211).

## V. Discussion

The plaintiff argues that the ALJ erred in: (1) not finding that the plaintiff was disabled under Medical Vocational Rule 201.14; (2) evaluating whether the plaintiff's impairments met or equaled a listing; (3) not having a medical advisor at the hearing; (4) not giving controlling weight to Dr. Goodrich's opinion of disability; (5) finding the plaintiff not credible; and (6) formulating the hypothetical question to the VE.

A. Standard of Review.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*,

487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

B. Whether the ALJ erred in not finding that the plaintiff was equivalent to Medical Vocational Rule 201.14.

The plaintiff argues that the ALJ should have found him disabled based

on the Medical Vocational Guidelines ("grids"). (Doc. No 10 at 6-7). Use of the grids is only relevant, however, at the fifth step of the sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. In the present case, the ALJ rested his determination at the fourth step of the evaluation process. The grids were not relevant to the ALJ's disability determination. Thus, the ALJ did not err in not relying on them.

Moreover, Medical Vocational Rule 201.14, which the plaintiff cites, Doc. No. 10 at 6-7, relates to an individual whose past relevant work was skilled or semi-skilled and whose skills are not transferable. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14. This does not describe the plaintiff, whom the ALJ found capable of returning to his past relevant skilled and semi-skilled work. (TR. 25, 215-16).

C. Whether the ALJ erred in evaluating whether the plaintiff's impairments met or equaled a listing.

The plaintiff next contends that the ALJ glossed over step three of the sequential evaluation process, failing to discuss why the plaintiff did not meet or equal a listed impairment. (Doc. No. 10 at 7). The plaintiff's contention that the ALJ summarily stated that the plaintiff's impairments did not meet or equal a listed impairment without "identifying the relevant listed impairments," discussing the evidence, or explaining the reasoning" is incorrect. (Doc. No.

10 at 7). The plaintiff cites only the ALJ's summarized findings at the end of the decision, without bothering to take note of the paragraph in the text of the ALJ's decision, taking up more than half of a page, in which the ALJ discussed why the plaintiff's impairments did not meet Listings 12.04, affective disorders, 12.06, anxiety disorders, and 12.09, substance addiction disorders. (TR. 22). 20 C.F.R. pt. 404, subpt. P, app.1. In this paragraph, the ALJ explained why the plaintiff did not meet the B or C criteria of any of the three listings. (TR. 22). 20 C.F.R. pt. 404, subpt. P, app.1., Listings 12.04, 12.06, 12.09.

D. Whether the ALJ erred in not having a medical advisor at the hearing.

The plaintiff's third argument is that the ALJ erred in not having a medical advisor present at the hearing. The plaintiff contends that, because the record did not include a physical RFC evaluation from any treating physician, the ALJ should have consulted a medical advisor. The plaintiff contends that, because the ALJ did not consult a medical advisor, the ALJ's physical RFC finding is an impermissible medical opinion.

Medical advisers, primarily used in complex cases, serve to explain medical problems in terms understandable to the layman examiner. *Richardson v. Perales*, 402 U.S. 389, 408 (1971). Medical advisers are not

meant to fill in medical information that the plaintiff did not bring forward. *See id.* (noting that a medical adviser is neutral). Rather, the plaintiff bears the burden of producing evidence to show a disability. 20 C.F.R. §§ 404.1512, 404.1513(d); 416.912, 416.913(d); *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). Not only is the proffer of a RFC opinion not relevant to the role of a medical advisor, but to fault the ALJ for not submitting an RFC opinion from a medical advisor, to fill in a gap left in the evidence by the plaintiff, would effectively shift the burden of production to the ALJ.

Moreover, the plaintiff did not allege any physical limitations in his disability application paperwork. (TR. 69). The plaintiff reported that he did not need any special help with personal care, that he cleaned his own home, that he drove, and that he did his own shopping.[3] (TR. 81). The plaintiff attributed his failure to leave the house and participate in social activities to depression and panic attacks rather than to physical limitations. (TR. 85).

E. Whether the ALJ erred in not giving controlling weight to Dr. Goodrich's opinion of disability.

The plaintiff argues that the ALJ erred in discounting Dr. Goodrich's opinion, expressed in a state welfare benefits form, that the plaintiff was

[3] Notably, the plaintiff's statement that he drove a car conflicts with one of his two cited reason for being unable to work. (TR. 69, 82).

permanently disabled. (Doc. No. 10 at 9). The ALJ did not credit this opinion, noting that it was not controlling within the meaning of Social Security Ruling 96-2p. (TR. 21).

The ALJ's determination is supported by substantial evidence. "[A] statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive of the issue. *Adorno v. Shalala*, 40 F.3d 43, 47, 48 (3d Cir. 1994) (citations omitted). *See also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (relating that a "statement by a medical source that you are'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Social Security Ruling 96-2p's rule that an attending physician's medical opinion be granted either controlling weight or some lesser level of deference applies, by its terms, only to "medical" opinions. Opinions as to the ultimate issue of disability, on the other hand, are not entitled to deference; this issue is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), (e)((2), 416.927(e)(1), (e)(2).

Moreover, the record does not support Dr. Goodrich's opinion that the plaintiff was disabled due to COPD, depression, tobacco abuse, and a seizure disorder. "[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best" and of suspect reliability when

not accompanied by written reports. *Claussen v. Chater*, 950 Fed. Supp. 1287, 1291 (D.N.J. 1996) (*citing Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Taking the impairments listed by Dr. Goodrich in order, first, the record contains no definite diagnosis of COPD. (TR. 151-53). An April 2004 chest x-ray showed a COPD pattern only, with no acute disease. (TR. 151). Second, the plaintiff's depression, as evaluated by Dr. Sharma, resulted in a GAF of fifty-five, indicating only moderate limitations. (TR. 148-49, 186). Third, as for Dr. Goodrich's opinion that the plaintiff's tobacco use was disabling, it should be noted that Dr. Goodrich prescribed only cough syrup after diagnosing acute bronchitis and a tobacco use disorder. (TR. 153). And although the plaintiff smokes, he has been repeatedly advised to quit. (TR. 125, 126, 153). Finally, the record contains no diagnosis of a seizure disorder, but documents four seizures, all of which were induced by alcohol withdrawal. (TR. 85, 91-111, 154, 172-82). The plaintiff takes no seizure medications and is permitted to drive. (TR. 82, 84).

F. Whether the ALJ erred in finding the plaintiff not credible.

The plaintiff contends that the ALJ's finding that the plaintiff's allegations regarding his limitations were not fully credible was in error. (TR. 25; Doc. No 10 at 9-10). The ALJ found the plaintiff's "subjective allegations of totally

disabling symptomatology" not credible "in light of the medical evidence." (TR. 23). The ALJ also found that the fact that the plaintiff was "not forthcoming" regarding the role alcohol played in his alcohol withdrawal seizures undermined his credibility. *Id*. Notably, the plaintiff repeatedly failed to heed his physicians' advice to enter an alcohol treatment program. (TR. 118-28, 186). Such failure to follow prescribed treatment, such as using prescribed medication, may undermine a claim of debilitating pain. *Jesurum v. Sec'y of Health and Human Serv.*, 43 F.3d 114, 119 (3d Cir. 1995).

The ALJ also found the plaintiff's subjective complaints unsupported by the record; substantial evidence support this finding. (TR. 23). While the plaintiff alleged memory deficits, as the ALJ pointed out, the plaintiff's treating psychiatrist, Dr. Sharma, never documented deficiencies in this area. Instead, Dr. Sharma noted that the plaintiff's memory was intact and that his attention span was good. (TR. 149, 186). The ALJ also noted that the plaintiff was able to perform many daily activities despite his claims of disabling back pain, which is otherwise unmentioned in the medical record.[4] (TR. 119-33, 152-83). The plaintiff reported that he was able to

---

4 A single reference to back pain was found in the medical record. An August 2003 progress note states that the plaintiff reported that he had recently experienced stiffness in his groin after getting up from his recliner,

cook, clean, shop, and even drive, despite citing the inability to drive as a disabling condition. (TR. 69, 81-82).

G. Whether the ALJ erred in formulating the hypothetical question to the VE.

Lastly, the plaintiff contends that the ALJ erred in formulating the hypothetical question to the VE. (Doc. No. 10 at 10-11). The plaintiff contends that the ALJ erred in not factoring the plaintiff's emphysema and back problems into the hypothetical question. (Doc. No. 10 at 10-11). Only those impairments and resulting limitations supported by the record are required to be included in the hypothetical. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the record was devoid of evidence relating to the plaintiff's emphysema or back impairments; the medical record contained not so much as a diagnoses of either. (TR. 119-33, 152-83). Thus, the ALJ did not err in not including those impairments in the hypothetical.

---

and that he had slept in the same recliner for the previous year without problems. The plaintiff stated that he had no back pain, and that he had back problems in the past but that this was not the same. (TR. 124).

## VI. Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT** the plaintiff's appeal of the decision of the Commissioner, (Doc. No. 1), be **DENIED**.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:** July 28, 2006
O:\shared\REPORTS\2005 Reports\05-1569.01.wpd